# Richmond.

## American Exchange Bank, a Corporation, v. Goodlee Realty Corporation, a Corporation.

### March 15, 1923.

### Absent, Burks, J.

1. Landlord and Tenant—*Removal of Tenant's Goods by Lienholder or Purchaser—Recovery by Landlord Against Such Lienholder or Purchaser—Section 5524 of the Code of 1919.*—Under section 5524 of the Code of 1919 a landlord who has failed to perfect his lien for rent, by distress or attachment levied on the tenant's goods while on the leased premises, or within thirty days after the goods are removed therefrom by a purchaser thereof, or a party having a lien of any kind thereon created after the commencement of the tenancy, can maintain an action instituted more than thirty days after the removal of the goods from the premises, against such purchaser or lienholder, and hold him personally liable for the value of the goods removed by him from the premises, to the extent of so much of the rent, if any, to which the landlord is entitled under the lease, as was at the time of such removal in arrear and unpaid, and for so much of such rent as was to and did under the lease become due thereafter (not being more altogether than a year's rent), and was not secured to be paid to the landlord by such purchaser or lienholder before the removal of the goods.

2. Statutes—*Construction—Adoption of Judicial Construction Where Statute of Another Jurisdiction is Enacted—Section 5524 of the Code of 1919 and 8 Anne, Chapter 14, Section 1, as to Removal of Tenant's Goods by Lienholder or Purchaser.*—The object of section 5524 of the Code of 1919 and the prior Virginia statutes to the same general effect, providing for protection of the landlord's claim for rent when goods of the tenant are removed from the premises, and the nature of the duty imposed by it on those violating its requirements, are the same as that of the statute of 8 Anne, chapter 14, section 1, and hence the settled construction of the latter statute by the English decisions, with respect to the liability imposed by it on the persons violating its requirements, must be taken to have been adopted in this State when the statute was first enacted and subsequently amended from time to time.

3. LANDLORD AND TENANT—*Landlord's Lien—Sections 5523 and 5524 of the Code of 1919 Forbidding Removal of Tenant's Property.*—Accurately speaking, neither section 5524 nor section 5523 of the Code of 1919 (which were sections 2792 and 2791 of the Code of 1887), gives the landlord any lien for rent, although in some of the cases discussing the subject statutes like section 5524 are referred to as giving the landlord a lien. But it is apparent from the facts of such cases that what is meant thereby is that such statutes give the landlord the right to have the property remain on the premises, subject to his inchoate lien, unless the terms of the statute permitting removal thereof are complied with.

4. LANDLORD AND TENANT—*Landlord's Lien—How Obtained—Inchoate Lien.*—In Virginia the only methods by which a landlord can obtain a lien for rent, prior to a judgment and execution therefor, is by distress warrant or attachment levied on the property liable for rent while it is on the leased premises, or within thirty days after its removal therefrom. Until a lien is thus obtained the landlord's right to a lien is inchoate.

5. LANDLORD AND TENANT—*Landlord's Lien—Relation Back to the Beginning of the Tenancy.*—When a landlord's lien for rent is obtained, it relates back to the beginning of the tenancy, and takes precedence of any lien of any other person obtained or created upon goods or chattels on the leased premises after the commencement of the tenancy.

6. LANDLORD AND TENANT—*Section 5524 of the Code of 1919 and 8 Anne, Chapter 14, Section 1, as to Removal of Goods by Lienholder or Purchaser—Landlord's Remedy—Measure of Damages.*—It was settled at an early day by a long line of English decisions that under statute of 8 Anne, chapter 14, section 1, the removal of the goods mentioned in the statute, after notice that the rent is in arrear, without first complying with the terms thereof upon which the permission to remove the goods was given, was a wrong to the estate of the landlord, for which he might maintain an action in case against the person removing the goods and recover a personal judgment against him for the value of the goods removed, if not in excess of the amount of one year's rent in arrear, and, if the goods removed were in excess of that amount, then for the amount of the rent in arrear, for one year, and costs of suit, and the same is of course true under section 5524 of the Code of 1919.

7. LANDLORD AND TENANT—*Section 5524 of the Code of 1919 and 8 Anne, Chapter 14, Section 1.*—In an action by a landlord under section 5524 of the Code of 1919 against a lienholder or purchaser removing goods of the tenant from the premises, whether or not other goods liable for rent sufficient to satisfy the rent in arrear were left on the premises, or whether the landlord could have levied a distress warrant on the goods before they were removed, or whether there was a conversion

of the goods which prevented such levy, or any fraud or other conduct whatsoever on the part of the person removing the goods, which was the proximate cause of the loss or damage to the landlord sought to be recovered in the action, is immaterial as bearing on the right of recovery of the landlord.

8. LANDLORD AND TENANT—*Section 5524 of the Code of 1919, as to Removal of Goods by Lienholder or Purchaser—Instructions—Notice.*—In an action by a landlord under section 5524 of the Code of 1919 for removal of the tenant's goods without complying with the statute, an instruction objected to by defendant should have predicated the direction to the jury to find for the plaintiff as stated therein upon their finding the additional facts that the defendant at the time of the removal of the property had notice that further rent would become due thereafter, and that the value of the property removed was not less than the amount sued for, and there should have been no reference in the instruction to the subject of what property was left on the premises. But as the excess value of the property was established by the evidence and the requisite notice could not have been otherwise than inferred by the jury from the evidence, and the reference to the property left on the premises might have been treated as surplusage, there was no error in the instruction of which the defendant could complain.

9. LANDLORD AND TENANT—*Section 5524 of the Code of 1919 and 8 Anne, Chapter 14, Section 1, as to Removal of Goods by Lienholder or Purchaser—Notice that Rent is in Arrear—Exact Amount of Arrears.*— Under section 5524 of the Code of 1919, as under 8 Anne, chapter 14, section 1, the liability of the person removing the property is not dependent upon notice to him of the exact amount which is unpaid of rent mentioned in the statute. Notice of any rent so mentioned being in arrear, or to become due, puts the person removing the property upon inquiry, and is equivalent to notice of the exact amount of such rent, if by inquiry of the landlord he would have ascertained the amount.

10. LANDLORD AND TENANT—*Section 5524 of the Code of 1919, as to Removal of Goods by Lienholder or Purchaser—Retail Merchants.*—A landlord by leasing premises to a retail merchant with knowledge that he is going to conduct such a business thereon, or by thereafter knowingly assenting to the conduct of a retail business by his tenant, will be held to have waived his inchoate or statutory lien upon a shifting stock of goods, and all right to assert a personal liability to him for rent against purchasers of articles of merchandise from the tenant in the regular course of retail trade.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment

for damages.    Judgment for plaintiff.    Defendant assigns error.

*Affirmed.*

This action was begun by the following notice of motion for judgment:

"To The American Exchange Bank of Norfolk, Virginia:

"Take notice that on Wednesday, March 23, 1921, at ten o'clock A. M., or as soon thereafter as counsel may be heard, the undersigned will move the Circuit Court of the city of Norfolk, Virginia, at the courthouse thereof, for a judgment against you for the sum of $750.00, with interest thereon from the 31st day of December, 1920, until paid, for this, to-wit:

"That on the 18th day of October, 1920, the undersigned held a lease as lessor with one G. M. Smith, lessee, on property located at 780 Granby street, in the city of Norfolk, Virginia, which said lease bears date on the 10th day of November, 1919, for a period of one year from January 1, 1920; that on the 18th day of October, 1920, prior thereto or since, you did remove, or cause to be removed, from the said leased premises, certain automobile trucks more specifically described as Winther Motor Trucks and automobile parts, not leaving sufficient property on the lot, which constituted the stock in trade of the said C. M. Smith at the time, and placed, or caused to be placed, said truck and parts in warehouses in the city of Norfolk, Virginia, and took thereon warehouse receipts and attached the same to a collateral note or notes executed by the said C. M. Smith, in order to secure to you the payment of certain indebtedness owed to you by the said Smith, and this you did without complying with the provisions of section 5524 of the 1919 Code of Virginia.    The said

$750.00 is the amount of rent due and unpaid under the said lease for the months of October, November and December, 1920, the said amount not being more altogether than a year's rent as provided for in the above aforesaid section of the 1919 Code of Virginia.

> "Goodlee Realty Corporation,
> "By R. C. Cole, Counsel."

The defendant in error, the plaintiff in the court below, will be hereinafter referred to as the plaintiff landlord or landlord; the plaintiff in error as the defendant lienholder or defendant; and C. M. Smith, the lessee, as the lessee.

There was a trial by jury which resulted in a verdict for the plaintiff landlord against the defendant lienholder for the sum of $750.00 and the judgment under review was entered accordingly.

The material facts, as shown by the evidence, without conflict for the most part and, in those instances where there was conflict in the testimony, by sufficient evidence to support the finding of the jury, are as follows:

The lessee conducted an automobile truck repair and retail sales business in the city of Norfolk, Va., in premises rented by the lessee of the plaintiff landlord under a lease for a period of one year which began on January 1st and expired on December 31, 1920, the rent being due and payable in equal monthly installments of $250.00 on the last day of each month. On October 1 or 2, 1920, the plaintiff landlord placed in the hands of an officer a distress warrant against the lessee for the unpaid rent for the months of July, August and September, 1920, which was levied on October 2, 1920, upon two certain trucks and automobile repair parts then on the said premises and belonging to the lessee.

There is some mention made in the testimony for the defendant lienholder of its having lent the lessee some money prior to the beginning of said tenancy upon the security of a bill of sale of one of these trucks given by the lessee in 1919 before this truck was taken to the said premises, but as the possession of this truck was not taken and held by the defendant lienholder, such possession being retained by the lessee, so that such truck came upon the premises during the tenancy unencumbered, so far as the evidence discloses, by any lien having preference over the landlord's common law or statutory rights, this circumstance may be disregarded as immaterial.

The lessee arranged with the defendant lienholder to pay off the lien of the distress warrant and also enough additional money to satisfy $700.00 overdraft owing by lessee to such lienholder, upon the security of the trucks and automobile parts which the distress warrant had been levied upon as aforesaid. Accordingly, on October 5, 1920, the defendant lienholder lent the lessee $1,480.00, took his note therefor, secured by a bill of sale of one of the said trucks and of said automobile parts, executed that day, and thereafter, on the same day, removed both of said trucks and said automobile parts from the said premises, and on the same day stored the two trucks with a storage company, taking its negotiable receipts therefor, by which the storage company agreed to deliver the same to the order of the defendant lienholder, or bearer, upon surrender of the receipts, respectively, on payment of certain stipulated charges, and on October 18, 1920, stored the automobile parts with the same storage company taking a like receipt therefor, containing the same agreement; and the defendant lien creditor on October 5, 1920, prior to removing the property from said prem-

ises, paid the officer $780.00, the amount of the distress warrant, being all of the rent in arrear then due the plaintiff landlord, together with interest and costs; entered on its books the satisfaction of said $700.00 overdraft indebtedness of the lessee; and, thereafter, held the said bill of sale of that date, of the aforesaid truck covered thereby and the said 1919 bill of sale covering the other truck, as aforesaid, and the storage company receipts, after obtaining them, all as collateral security for said loan of $1,480.00 to the lessee; and still held such collateral security at the time the instant action was instituted, which was on March 8, 1921, the trucks and automobile parts having remained in storage with said storage company until the action was instituted; and, indeed, the trucks remained in such storage until May 4, 1921, which was after the verdict (which was returned on April 21, 1921), and but a short time before the judgment under review was entered (which was on May 17, 1921). On May 4, 1921, the defendant lienholder assigned the storage company receipts for said trucks to a third party. It does not appear from the record whether the storage company receipt for the automobile parts has ever been assigned, or that the parts have ever been removed from said storage.

The evidence, without conflict, shows that the value of the property removed from the premises as aforesaid exceeded the $750.00, the amount of the one year's rent which thereafter became due, for the recovery of which the action was brought, and that the same was not secured to the plaintiff landlord by the defendant lienholder before the property was so removed, and that this rent still remained wholly unpaid at the time the judgment under review was entered.

There was other evidence concerning the issuance and

levy of a distress warrant on December 6, 1920, on certain property in the possession of the lessee on said premises for the rent for October and November, 1920, which proved to be wholly unavailing because the lessee during the month of December was adjudged a bankrupt and most of the property thus levied upon was found not to belong to the lessee, so that the amount realized by the trustee and turned over to the referee in bankruptcy was only a trifling sum, which was consumed in costs in the bankruptcy proceedings, leaving nothing for the landlord or for any of the creditors of the lessee; and this and other evidence tended to show that at the time of said removal of said property from the premises on October 5th, sufficient property liable for the rent was not left on the premises to satisfy the aforesaid balance of the year's rent which was not then in arrear but was to and did thereafter become due. But, as this evidence is all immaterial in view of the conclusion reached in the opinion, no detailed statement of it is here made.

The material assignments of error are as follows:

That the trial court erred—

In granting, at the request of the plaintiff, the following instruction:

"The court instructs the jury that if you believe from the evidence that the defendant removed, or caused to be removed, property of the tenant from the leased premises for the purpose of acquiring a lien thereon, for sale, or otherwise, and did acquire such lien thereon, or did dispose of said property by sale, or otherwise, after said property had been placed on the premises, not leaving sufficient property on said premises to satisfy the balance due for a year's rent, and without securing to the plaintiff, who was the landlord, such balance due for the year's rent, you shall find for

the plaintiff and assess its damages at such an amount as you may believe to be due, not to exceed seven hundred and fifty ($750.00) dollars."

In refusing to grant the following instructions asked for by the defendant lienholder:

"The court instructs the jury that if the landlord failed to perfect a lien by legal proceedings for the rent due or to become due for a period not exceeding one year while the goods were on the premises or within thirty days after they were removed therefrom, and the defendant obtained a lien upon the goods which has existed for more than thirty days after the goods were removed from the premises, then they shall find for the defendant."

"The inability of the landlord to locate the goods removed from the premises within thirty days after removal, does not relieve the landlord from the necessity of making a levy or distress within that time." And,

In refusing to set aside the verdict as being contrary to the law and evidence.

*H. H. Kanter* and *Edgar Hecht*, for the plaintiff in error.

*R. C. Cole* and *Alfred Anderson*, for the defendant in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court.

As stated in the petition for the writ of error in this case, there is but a single question presented by the assignments of error, and that question is as follows:

[1] 1. Can a landlord, who has failed to perfect his

lien for rent, by distress or attachment, levied on the tenants' goods while on the leased premises, or within thirty days after goods are removed therefrom by a purchaser thereof, or party having a lien of any kind thereon created after the commencement of the tenancy, maintain an action instituted more than thirty days after the removal of the goods from the premises, against such purchaser or lienholder, holding the latter personally liable for the value of the goods removed by him from the premises, to the extent of so much of the rent, if any, to which the landlord is entitled under the lease, as was at the time of such removal in arrear and was not paid, if any, and so much of such rent as was to and did, under the lease, become due thereafter (not being more altogether than a year's rent) and was not secured to be paid to the landlord by such purchaser or lienholder before the removal of the goods?

The question must be answered in the affirmative.

The personal liability in question is imposed by the statute which, as it stood when the cause of action in the instant case arose, is contained in section 5524 of the Code, which is as follows:

"Section 5524. When goods not to be removed without paying a year's rent; lien for taxes, levies and militia fines not affected.—If, after the commencement of any tenancy, a lien be obtained or created by deed of trust, mortgage, or otherwise, upon the interest or property in goods or premises leased or rented, of any person liable for the rent, or the said goods be sold, the party having such lien, or the purchaser of such goods, may remove them from the premises on the following terms, and not otherwise, that is to say; on the terms of paying to the person entitled to the rent so much as is in arrear, and securing to him so much as is to become due, what is so paid or secured not being more altogether than a

year's rent in any' case. 'If the goods be taken under legal process, the officer executing it shall, out of the proceeds of the goods, make such payment of what is in arrear; and as to' what is to become due, he shall sell a sufficient portion of the goods on a credit till then, taking from the purchasers bonds, with good security, payable to the person so entitled, and delivering such bonds to him. If the goods be not taken under legal process, such payment and security shall be made and given before their removal. Neither this nor the preceding section shall affect any lien for taxes, levies, or militia fines. (Code 1887, section 2792).''

This statute as first enacted in Virginia appears in 1 Revised Code 1919, section 7, page 448; by its terms it was applicable to persons taking any goods or chattels lying or being on leased premises ''by virtue of any writ of execution (or) on any pretence whatsoever'' (the word ''or'' being evidently a printer's error and no part of the statute), and provided that such goods or chattels should not be so taken ''unless the party so taking the same, shall, before removal of the goods from off such premises, pay or tender to the landlord or lessor thereof or his agent, all the money or tobacco due, for the rent of the said premises, at the time of taking such goods or chattels in execution.'' On the margin we find this note of the revisors of such Code: ''Goods upon leasehold lands not to be taken in execution until rent in arrear be paid. 8 Anne, chap. 14, sec. 1.''

The statute of 8 Anne, chapter 14, section 1, so far as material, was as follows:

''For the more easy and effectual recovery of rents reserved on leases  *  *  ;  *  *  *  no goods or chattels whatsoever lying or being in or upon any 'leased premises' shall be liable to be taken by virtue of any

·execution, on any pretence whatsoever, unless the party at whose suit the said execution is sued out shall before the removal of such goods from off the said premises, by virtue of such execution or extent, pay to the landlord of the said premises or his bailiff, all such sum or sums of money as are or shall be due for rent for the said premises at the time of the taking such goods or chattels by virtue of such execution; provided the said arrears of rent do not amount to more than one year's rent; and in ·case the said arrears shall exceed one year's rent, then the said party, at whose suit such execution is sued out, paying the said landlord or his bailiff one year's rent, may proceed to execute his judgment as he might have ·done before the making of this act; and the sheriff or ·other officer is hereby empowered and required to levy .and pay to the plaintiff as well the money so paid for rent as the execution money."

[2]  The statute, as first enacted in Virginia, was sub-·sequently limited in its scope so as to apply to one year's rent only, but was made to apply to the portion ·of such rent to become due, as well as to that in arrears; and the statute was enlarged in its scope from time to time so as to embrace other taking and removal of ·goods than under execution, until it finally attained the form in which we find it in section 5524 of the present Code, aforesaid; but the object of the statute and the nature of the duty imposed by it on those violating its requirements, who are mentioned in it, are the same as ·of the said statute of 8 Anne; and hence the settled con-·struction of the latter statute by the English decisions, with respect to the liability imposed by it on the persons violating its requirements, must be taken to have been adopted in this State when the statute was first enacted .and subsequently amended here from time to time.

[3-5] It is true, as urged in behalf of the defendant

lienholder in the instant case, that, accurately speak-
ing, neither section 5524 nor section 5523 of the present
Code (which were sections 2792 and 2791 of the Code of
1887) gives the landlord any lien for rent (Burks' Pl.
& Pr. [1st. ed.], sec. 13, pp. 12-14); although in some of
the cases discussing the subject statutes like section
5524 are referred to as giving the landlord a lien.   But
it is apparent from the facts of such cases that what is
meant thereby is that such statutes give the landlord
the right to have the property remain on the premises
subject to his inchoate lien unless the terms of the stat-
ute permitting removal thereof are complied with.  (See
*Wades* v. *Figgatt,* 75 Va. 575; *Anderson* v. *Henry,* 45
W. Va. 319, 31 S. E. 998; *Burket* v. *Boude,* 3 Dana (Ky.)
209.   Compare *Mutual Fire Ins. Co.* v. *Ward,* 95 Va.
231, at page 247, 28 S. E. 209.)   In this State the only
methods by which a landlord can obtain a lien for rent,
prior to a judgment and execution therefor, is by dis-
tress warrant or attachment levied on the property lia-
ble for rent while it is on the leased premises, or within
thirty days after its removal therefrom.  (See chapter
227 and section 6416 of the Code.)   Until a lien is thus
obtained the landlord's right to a lien is inchoate in this
State.   *Dime Deposit Bank* v. *Wescott,* 113 Va. 567, 75
S. E. 179; *Bird* v. *City of Richmond,* 240 Fed. 545, 153
C. C. A. 249; *Geiger's Adm'r* v. *Harman's Ex'x,* 3 Gratt.
(44 Va.) 130; Burks' Pl. & Pr., *supra.*   When such lien
is so obtained it relates back to the beginning of the
tenancy and takes precedence of any lien of any other
person obtained or created upon goods or chattels on
the leased premises after the commencement of the ten-
ancy.   *Wades* v. *Figgatt,* 75 Va. 575; *City of Richmond*
v. *Duesberry,* 27 Gratt. (68 Va.) 210; *Anderson* v. *Henry,*
45 W. Va. 319, 31 S. E. 998.
Hence the numerous decisions in the jurisdictions

where there are statutes changing the common law on the subject and giving to landlords a lien on all property liable to distress for rent, while on the leased premises and (in most instances) for a certain period after it has been removed from the premises (in the greater number of which decisions the liability enforced arises from the defeat of the landlord's lien by the fraudulent or wilfully wrongful conversion of the property), have no controlling application in this State in such a case as that in judgment. See 18 Am. & Eng. Ency. of Law (2nd ed.) bb. p. 350, and cases cited; 24 Cyc. (F), pp. 1267-8, and cases cited; also *Hyman* v. *Hibernia Bank*, 139 La. 411, 71 So. 598; *Id.*, 144 La. 1074, 81 So. 718; *West Furniture Co.* v. *Cason* (Tex. Civ. App.), 218 S. W. 774; *Chute* v. *Brown*, 103 Wash. 364, 174 Pac. 438.

Nor is Bishop on Non-Contract Law, section 132, and the authorities there cited, other than 2 Institutes, or *Hayes* v. *Michigan Cent. R. Co.*, 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410, or *C. & O. R. Co.* v. *Bank*, 92 Va. 495, 504, 23 S. E. 935, 44 L. R. A. 457, and note, precisely in point, although the principle involved therein is a kindred one to that involved in the case before us. These authorities and the instant case are alike in this: The statutes dealt with therein must be looked to, and their provisions must be interpreted in the light of their object—of the mischief sought to be remedied and the relief intended to be afforded—in order to determine whether they impose any duty to individuals for the violation of which the statute means to give to the individual a cause of action against the one violating the duty. But, speaking broadly, the statutes dealt with by the authorities just mentioned, other than those referred to in Lord Coke's Institutes, where they are held to impose such a duty and to confer such a cause of action, impose a duty less specific in its nature than does

the statute involved in the instant case; the liability for the violation of the former statutes has to be determined more in accordance with the rules governing liability in actions of tort for negligence, than is required by the last named statute, according to the settled construction of it aforesaid.

We come now to the consideration of the construction of the statute involved in the case before us.

[6] It was settled at an early day, by a long line of English decisions, that under the statute of 8 Anne, chapter 14, section 1, aforesaid, the removal of the goods mentioned in the statute, after notice that the rent is in arrear, without first complying with the terms thereof upon which the permission of removal was thereby given, was a wrong to the estate of the landlord, for which he might maintain an action in case against the person removing the goods and recover a personal judgment against him for the value of the goods removed, if not in excess of the amount of one year's rent in arrear, and, if the goods removed were in excess of that amount, then for the amount of the rent in arrear, for one year, and costs of suit.

Under the English decisions, in such case, the notice need not be of the exact amount of the rent in arrear. Notice that any of the rent mentioned in the statute was in arrear put the person removing the property upon inquiry and was equivalent to notice of the exact amount, if his failure to make inquiry of the landlord as the only reason he did not know of the amount.

[7] No other circumstances, such as whether or not other goods liable for rent sufficient to satisfy the rent in arrear were left on the premises, or whether the landlord could have levied a distress warrant on the goods before they were removed, or whether there was a conversion of the goods which prevented such levy, or any

fraud or other conduct whatsoever on the part of the person removing the goods, which was the proximate cause of the loss or damage to the landlord sought to be recovered in the action, being inquired into, or considered as at all essential to the right of recovery of the landlord in such action to the extent aforesaid.

Where the proceeding was against an officer the practice was for the landlord, in lieu of an action in case, to proceed against the officer by motion, upon which a rule was issued against the officer to show cause against such judgment as aforesaid being entered against him for the money in his hands derived from the sale under the execution which should have been paid to the landlord, if the money was still in the officer's hands, and if wrongfully paid out, then against him personally; there being in such proceeding by motion the same liability upon the officer as if there had been an action in case against him.

*Palgrave* v. *Windham,* 1 Strange, 212; *Smith* v. *Russell,* 3 Taunt. 400; *Hoskins* v. *Knight,* 1 M. & S. 245; *Henchett* v. *Kimpson,* 2 Wils. 140; to cite only a few of the decisions on the subject. See also 7 Com. Dig., pp. 261-3.

The said statute of 8 Anne, or substantially the same statute, was enacted also in New York, Pennsylvania and Kentucky, and such statutes have been given the same construction by the decisions of those States as the statute of 8 Anne by the English decisions. See *People* v. *Schenk,* 2 Johns. (N. Y.) 479; *Alexander* v. *Mahon,* 11 Johns. (N. Y.) 185; *West's Adm'r* v. *Sink,* 2 Yeates (Pa.) 274; *Burket* v. *Boude,* 3 Dana (Ky.) 209, 210-11.

In the last cited case the Kentucky court says that the statute involved was a transcript of the statute of 8 Anne and "that the interpretation which has been given to the latter statute by the English courts has

been heretofore adopted by this court as a guide for the interpretation of the" Kentucky statute in question. The court further says this: "The landlord has two remedies against an officer who takes property from the demised premises by execution, without paying the rent. First, he may move the court to which the execution is returnable for a rule upon the officer to pay over the money raised by the sale under execution, or so much thereof as will satisfy his rent. Or, second, he may maintain an action on the case against him for taking and removing the property under execution before his year's rent is paid.

"In the former action he waives the tort in the taking of the property, affirms the sale, and asks an application of the fund raised, * * * . 1 Strange 97, 643; 2 Strange 1024; 7 Com. Dig. 262-3, title rent, letter D. 8; Bradley on Distress, 215, 119.

"But when the action on the case is brought, it is brought for the wrongful act of the officer, in taking and removing the property, * * * . Besides, the statute expressly prohibits the removal of the property before the year's rent is paid. In case it is removed, what is the criterion of damages? Surely the value of the thing removed, provided that value does not exceed the year's rent. To that amount he is injured, * * * and to that amount he has a right to recover in this action * * ."

It follows from what we have said above that there was no error committed by the trial court of which the defendant lienholder complains in the assignments of error.

[8, 9] To have fully and accurately stated the law as applicable to the case the instruction given should have predicated the direction to the jury to find for the plaintiff as stated therein upon their finding the additional

facts that the defendant at the time of the removal of the property had notice that further rent would become due thereafter and that the value of the property removed was not less than the amount of such rent, to-wit, $750.00; and there should have been no reference to the subject of what property was left on the premises.

Under section 5524 aforesaid, as under the statute of 8 Anne, the liability of the person removing the property is not dependent upon notice to him of the exact amount which is unpaid of rent mentioned in the statute. Notice of any rent so mentioned being in arrear or to become due, puts the person removing the property upon inquiry and is equivalent to notice of the exact amount of such rent, if by inquiry of the landlord he would have ascertained the amount.

But it appears from the statement of facts preceding this opinion that the excess value of the property was established by the evidence without conflict; that the aforesaid notice was had, was not the subject of any controversy before the jury and could not have been otherwise than inferred by the jury from the circumstances disclosed in evidence; and the reference to what property was left on the premises may be treated as surplusage. Hence, there was in truth no error in the instruction of which the defendant could justly complain.

The instructions asked for by the defendant were properly refused and the motion to set aside the verdict was properly denied in view of the conclusions which we have reached above.

[10] It is urged in argument for the defendant that such conclusions will lead to the result that customers of retail merchants, who are tenants of leased premises, will be unable to purchase articles of merchandize and

remove them from the premises without being liable to the landlord for their value, if there is any unpaid rent in arrear at the time, or which thereafter becomes due to the landlord, under the tenancy. But that result by no means follows. It has been uniformly held, as we believe, that by leasing the premises to such a tenant with knowledge that he is going to conduct such a business thereon, or by thereafter knowingly assenting thereto, the landlord will be held to have waived his inchoate or statutory lien upon a shifting stock of goods and all right to assert a personal liability to him for rent against purchasers of articles of merchandise from the tenant in the regular course of retail trade. *Grant* v. *Whitwell*, 9 Iowa 152, 158; *Webb* v. *Sharp*, 13 Wall. 14-17, 20 L. Ed. 478. We do not think that what is said in *Offterdinger* v. *Ford*, 92 Va. at p. 651, 24 S. E. 246, is at all to the contrary. What is there said has no reference to this subject.

The case will be affirmed.

*Affirmed.*