UNITED STATES *v.* WADDILL, HOLLAND & FLINN, INC. ET AL.

No. 65.   Argued November 10, 1944.—Decided January 2, 1945.

*Mr. Paul A. Sweeney,* with whom *Solicitor General Fahy, Assistant Attorney General Shea* and *Mr. Walter J. Cummings, Jr.* were on the brief, for the United States.

*Mr. Rutledge C. Clement* for Waddill, Holland & Flinn, Inc., respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

The issue here is whether, in a state proceeding under a general assignment for benefit of creditors, Section 3466 of the Revised Statutes, 31 U. S. C. § 191, gives priority to a claim of the United States over a landlord's lien and a municipal tax lien.

Mrs. Oeland Roman, the assignor, operated a restaurant in Danville, Virginia, on premises leased from respondent Waddill, Holland & Flinn, Inc.   On June 19, 1941, she executed a general deed of assignment to a trustee for

the benefit of creditors, specifically conveying all personal property, fixtures and equipment used by her in the conduct of the restaurant and located on the premises. This property remained on the premises until sold by the trustee on July 12, 1941. After deduction of appropriate administrative expenses, a sum of $1,407.29 remained. Four creditors claimed priority of payment from this amount.

(1) The United States claimed the sum of $1,559.63, plus interest, representing certain unpaid federal unemployment compensation taxes and a debt arising out of a Federal Housing Administration transaction.

(2) The Virginia Unemployment Compensation Commission made a tax claim of $66.38, plus interest. The Commission's claim, however, was conceded to be subordinate to that of the United States and need not be further considered here.

(3) The City of Danville claimed $300.55 as personal property taxes still unpaid. On July 2, 1941, the City Collector distrained on all of the property on the leased premises.

(4) The landlord, Waddill, Holland & Flinn, Inc., claimed $1,500.00 for six months' rent due and to become due. The assignor's lease from this firm ran for five years beginning January 1, 1937, at a monthly rental of $250.00. On July 1, 1941, twelve days after the deed of assignment was executed, the firm obtained the issuance of a distress warrant for 3 2/5 months' past due rent and an attachment for 2 3/5 months' future installments of rent. On the same day, the firm levied the warrant and attachment on the assignor's property located on the leased premises.

The trustee under the general assignment filed a petition in the Corporation Court of Danville, reciting the various claims and requesting advice as to the proper distribution. That court held that the landlord was entitled to priority in payment over the claims of the United States and the

Virginia Unemployment Compensation Commission but that its claim was subordinate to that of the City of Danville for taxes in the sum of $222.31. On appeal by the United States, the Supreme Court of Appeals of Virginia affirmed this order of distribution. 182 Va. 351, 28 S. E. 2d 741. We granted certiorari because of the importance of the problems raised and because of asserted conflict with this Court's decisions in *New York* v. *Maclay,* 288 U. S. 290, and *United States* v. *Texas,* 314 U. S. 480.

Section 3466 of the Revised Statutes provides in pertinent part that "the debts due to the United States shall be first satisfied" whenever any person indebted to the United States is insolvent or, "not having sufficient property to pay all his debts, makes a voluntary assignment thereof." We hold that this statute clearly subordinates the claims of both the landlord and the municipality to that of the United States. The judgment of the court below must accordingly be reversed.

The words of § 3466 are broad and sweeping and, on their face, admit of no exception to the priority of claims of the United States. *Thelusson* v. *Smith,* 2 Wheat. 396, 425; *United States* v. *Texas, supra,* 484. But this Court in the past has recognized that certain exceptions could be read into this statute. The question has not been expressly decided, however, as to whether the priority of the United States might be defeated by a specific and perfected lien upon the property at the time of the insolvency or voluntary assignment. *Conard* v. *Atlantic Insurance Co.,* 1 Pet. 386, 441, 444; *Brent* v. *Bank of Washington,* 10 Pet. 596, 611, 612; *Spokane County* v. *United States,* 279 U. S. 80, 95; *United States* v. *Knott,* 298 U. S. 544, 551; *New York* v. *Maclay, supra,* 293, 294; *United States* v. *Texas, supra,* 485, 486. It is within this suggested exception that the landlord and the municipality seek to bring themselves. Once again, however, we do not reach a decision as to whether such an exception is permissible for we do not

believe that the asserted liens of the landlord and the municipality were sufficiently specific and perfected on the date of the voluntary assignment to cast any serious doubt on the priority of the claim of the United States.

The landlord rests its claim upon certain provisions of the Virginia Code of 1936. Sections 5519 and 5523 authorize a landlord to levy distress for six months' rent upon "any goods of the lessee . . . found on the premises, or which may have been removed therefrom not more than thirty days. . . . for not more than six months' rent if the premises are in a city or town." Section 5524 provides that the goods of the tenant on leased premises in a city or town may not be removed by a lienor or purchaser, nor taken under legal process, save "on the terms of paying to the person entitled to the rent so much as is in arrear, and securing to him so much as is to become due," not to exceed six months' rent. Other sections provide for officers making the distress under warrant from a justice, founded upon an affidavit of the person claiming the rent, and for such officers to make returns of their actions and proceedings upon such warrants. Provisions are also made for legal proceedings looking toward the possession and sale of the property to satisfy the debt.

The Supreme Court of Appeals of Virginia has here held that these sections "give the landlord a lien which is fixed and specific, and not one which is merely inchoate, and that such a lien exists independent of the right of distress or attachment, which are merely remedies for enforcing it." 182 Va. at 363, 28 S. E. 2d at 746. It has also held that such a lien "relates back to the beginning of the tenancy," 182 Va. at 364, 28 S. E. 2d at 746; thus giving it force and effect on date of the voluntary assignment. These interpretations of the Virginia statutes, as propositions of state law, are binding. But it is a matter of federal law as to whether a lien created by state statute is sufficiently specific and perfected to raise questions as to

the applicability of the priority given the claims of the United States by an act of Congress. If the priority of the United States is ever to be displaced by a local statutory lien, federal courts must be free to examine the lien's actual legal effect upon the parties. A state court's characterization of a lien as specific and perfected, however conclusive as a matter of state law, cannot operate by itself to impair or supersede a long-standing Congressional declaration of priority. *Field* v. *United States,* 9 Pet. 182, 201; *United States* v. *Oklahoma,* 261 U. S. 253, 260; *Spokane County* v. *United States, supra,* 90.

Tested by its legal effect under Virginia law, the landlord's lien in this instance appeared to serve "merely as a *caveat* of a more perfect lien to come." *New York* v. *Maclay, supra,* 294. As of the date of the voluntary assignment, it was neither specific nor perfected. It gave the landlord only a general power over unspecified property rather than an actual interest in a definitive portion or portions thereof.

Specificity was clearly lacking as to the lien on June 19, 1941, the date of the assignment. On that day it was still uncertain whether the landlord would ever assert and insist upon its statutory lien. Until that was done it was impossible to determine the particular six months' rent, or a proportion thereof, upon which the lien was based. The lien did not relate to any particular six months' rent but could attach only for the rent which might be due at or after the time when the lien was asserted. *Wades* v. *Figgatt,* 75 Va. 575, 582. And if it were asserted at a time when the tenancy had terminated or would terminate within six months of the date to which rent had been fully paid, the lien could only cover less than six months' rent. Conceivably the amount of rent due or to become due was uncertain on the day of the assignment. The landlord may have been mistaken as to the rental rate or as to payments previously made and the tenant may have been entitled

to a set-off. See *Allen* v. *Hart,* 18 Gratt. (59 Va.) 722, 737; *Hancock* v. *Whitehall Tobacco Co.,* 100 Va. 443, 447, 41 S. E. 860. Moreover, while the lien legally attached to all such property as might be on the premises when the lien was asserted or within thirty days prior to distraint, the landlord could distrain goods only to the extent necessary to satisfy the rent justly believed to be due, the tenant possessing an action for damages for excessive distraint. Va. Code § 5783; *Fishburne* v. *Engledove,* 91 Va. 548, 22 S. E. 354; *Gurfein* v. *Howell,* 142 Va. 197, 128 S. E. 644. Thus until the extent of the lien was made known by the landlord and until some steps had been taken to distrain or attach sufficient property to satisfy the lien, it was impossible to specify the goods actually and properly subject to the lien. Some of the goods on the premises may have been subject to mortgages or liens which attached before the goods were brought on the premises, in which case the landlord's lien would be inferior. Va. Code § 5523. And if other goods were removed after the date of the voluntary assignment but more than thirty days before the distraint or attachment, the right of distraint and attachment as to those goods would disappear. Va. Code § 5523; *Dime Deposit Bank* v. *Wescott,* 113 Va. 567, 75 S. E. 179. These factors compel the conclusion that neither the rent secured by the lien nor the property subject to the lien was sufficiently specific and ascertainable on the day of the voluntary assignment to fall within the terms of the suggested exception.

Nor was the statutory lien perfected as a matter of actual fact, regardless of how complete it may have been as a matter of state law. The tenant was divested of neither title nor possession by the silent existence of the landlord's statutory lien on the date of the assignment. Only after the lien was actually asserted and an attachment or a distraint leveled, enabling the landlord to satisfy his claim out of the seized goods, could it be argued that such goods

severed themselves from the general and free assets of the tenant from which the claims of the United States were entitled to priority of payment. Prior to that time, the lien operated to do no more than prevent the removal of goods from the premises by certain classes of persons, Va. Code § 5524, and give the landlord priority in distribution under state law provided that the goods remained on the premises. Such a potential, inchoate lien could not disturb the clear command of § 3466 of the Revised Statutes. Something more than a "*caveat* of a more perfect lien to come" was necessary.

The lien of the City of Danville stands in no better position insofar as the claim of the United States is concerned. The municipality contends that it assessed taxes on specific items of furniture and equipment pursuant to annual levies made by the city council and that a lien attached to such property on January 1, 1941, by operation of state law. It claims that this lien attached before the claim of the United States was acquired and hence had priority.

Under Virginia law, however, a municipal tax confers a lien on personal property which enables the city to follow it wherever it may be taken only if the assessment is specifically made on such property. *Drewry* v. *Baugh & Sons,* 150 Va. 394, 400, 401, 143 S. E. 713; *Chambers* v. *Higgins,* 169 Va. 345, 351, 352, 193 S. E. 531. The Corporation Court of Danville recognized that the city had not made such an assessment in this case since it held that assessment of the furniture and equipment as a unit was sufficient to satisfy this rule "so long as they remained on the premises where the owner's business was conducted." It realized that if this property unit were separated or removed from the premises different results would follow. Unless and until distraint was levied, which in this case occurred thirteen days after the voluntary assignment, it was uncertain whether the furniture and equipment would remain intact as a unit on the premises and hence be sub-

ject to the tax lien. If such property had been removed, distraint could then have been levied on other undetermined property of the tenant. At least until actual distraint, therefore, there was no certainty as to the property subject to the lien and no transfer of title or possession relative to any property. Such a lien cannot be said to be so explicit and perfected on the date of the voluntary assignment as to fall within the claimed exception to the priority of the United States.

*Reversed.*

MR. JUSTICE JACKSON is of opinion that the judgment should be affirmed for the reasons stated by the Supreme Court of Appeals of Virginia.